UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF GABRIEL LASALA, AS OWNER OF THE 2016 WORLD CAT MODEL 295CC, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 18-11057 c/w<br>18-11138, 19-9706<br>19-9798, 19-9819<br><br>SECTION D (2) |

**THIS DOCUMENT RELATES TO ALL CASES**

**ORDER AND REASONS**

Before the Court is Cantium, LLC's Motion for Summary Judgment Regarding Gabriel Lasala's Entitlement to Limitation of Liability.[1] Lasala has filed an Opposition,[2] and Cantium, LLC has filed a Reply.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Courts grants the Motion.

### I. FACTUAL BACKGROUND

This case arises from a boat's allision with a fixed platform. On April 28, 2018, Gabriel Lasala gathered with Randall Peterson, Marc Junot, Dale Presser, and Dale Presser's minor son at Lasala's home in Mississippi.[4] The group departed on Lasala's vessel, the 2016 World Cat Model 295CC, around 3:00 p.m. to fish.[5] Before departing, Lasala inspected the vessel to ensure it worked properly.[6] Lasala had also recently done work on the vessel, including replacing the bilge pumps and batteries.[7]

---

[1] R. Doc. 132.
[2] R. Doc. 140.
[3] R. Doc. 167.
[4] R. Doc. 125-2 at 4 ¶ 26; R. Doc. 132-3 at 25.
[5] R. Doc. 132-2 at 26.
[6] R. Doc. 140-5 at 11-13.
[7] *Id.* at 9-10.

The party went to Freemason Island.[8] When Lasala went to depart Freemason Island, he noticed that the boat was taking on water.[9] Lasala also noticed that the bilge light was on.[10] Lasala testified that he was "not sure exactly whether there was some problem with the bilge or not at the beginning."[11] Lasala opened the hatches and discovered eight to ten inches of water in the bilge.[12]

When Lasala tried to back off of the island, he discovered that the engines would not crank.[13] This indicated to Lasala that the vessel's batteries were low.[14] Lasala reconnected the batteries in a manner that allowed him to crank the engines.[15] The cranking engines were designed to charge the batteries.[16]

Lasala proceeded to navigate the vessel to tuna fishing grounds, which were a "two-hour or two-and-a-half-hour" trip from Freemason Island.[17] The bilge light remained on.[18] Lasala testified that this indicated to him that water was continuing to come into the vessel.[19] About twenty minutes after leaving Freemason Island, Lasala determined that the batteries were still "going down" because the bilge pump continued to remove water from the vessel.[20] At this point, Lasala decided to abandon the trip to the tuna fishing site and to head to Baptiste Collette and Northeast Pass.[21]

---

[8] R. Doc. 132-3 at 27.
[9] *Id.* at 28-29.
[10] *Id.* at 29.
[11] *Id.* at 30.
[12] *Id.* at 33.
[13] R. Doc. 132-3 at 35.
[14] *Id.* at 35-36.
[15] *Id.* at 35-37.
[16] *Id.* at 37.
[17] R. Doc. 132-3 at 37-38.
[18] *Id.* at 38-39.
[19] *Id.* at 40.
[20] *Id.* at 45.
[21] *Id.* at 45.

He did not inform the other passengers of his decision as "he did not want to panic anybody."[22]

Lasala raised the RPMs of the engines in an attempt to charge the batteries.[23] At one point, he also decided to turn off the radar.[24] Lasala acknowledged that some rigs were not marked on the GPS he used to navigate after turning off his radar.[25] Dale Presser was the only passenger awake, and Lasala did not ask him to assist with maintaining eye contact with what was ahead, although he assumed Presser would do so.[26]

In the early morning hours of April 29, 2018, Lasala vessel struck MP 37BE, a platform owned by Cantium, LLC ("Cantium").[27] The parties vigorously dispute whether the platform was properly lit.[28] The allision caused significant damages, and each person aboard the vessel has asserted claims.[29] Lasala filed an action under the Ship Owner's Limitation of Liability Act, seeking to limit his liability to the cost of the vessel, which he alleges is valued at $1,300.[30] The Court granted an injunction.[31]

Cantium now moves for summary judgment regarding Lasala's entitlement to limitation of liability.[32] In its Motion, Cantium argues that "there is no plausible way

---

[22] *Id.* at 45-46.
[23] R. Doc. 132-3 at 47-48.
[24] *Id.* at 50; R. Doc. 140-5 at 31.
[25] R. Doc. 132-3 at 57.
[26] *Id.* at 51.
[27] R. Doc. 132-3 at 53; R. Doc. 135-2 at 1 ¶ 1.
[28] *See, e.g.*, R. Doc. 135 (Motion for Summary Judgment by Cantium); R. Doc. 139 (Lasala's Opposition).
[29] Docket No. 19-9798, R. Doc. 1; Docket No. 18-11138, R. Doc. 1; Docket No. 19-9706, R. Doc. 1.
[30] *See generally* R. Doc. 1.
[31] R. Doc. 3.
[32] R. Doc. 132.

Lasala will not be assigned fault for this incident."[33] To make this point, Cantium points to various purportedly negligent actions of Lasala, including proceeding offshore when the vessel was taking on water, failing to have an up-to-date GPS unit or navigational charts on board, turning off the vessel's radar, and operating the vessel without a lookout. Cantium asserts that "These actions are not only negligent, but border on grossly negligent."[34] Cantium further argues that the *Pennsylvania* Rule creates a presumption of Lasala's negligence, as Lasala violated various Inland Rules of Navigation. Cantium also argues that Lasala necessarily had "knowledge and privity" of these facts as he owned and piloted his own pleasure vessel. Finally, Cantium contends that the Court need not find that Lasala's negligence was the sole cause of the allision, but rather the Court need only find that Lasala's negligence was one cause that contributed to the allision to deny him the right to limit liability.

In his Opposition,[35] Lasala argues that Canitum's negligence is the sole cause of the allision, and therefore he is entitled to limit his liability. Specifically, Lasala argues that Cantium violated a general statutory duty and Coast Guard regulations because it only had one navigational light operating on the platform. Lasala contends that these statutory and regulatory violations create a presumption that Cantium was negligent under the *Pennsylvania* Rule. Lasala also argues that his actions were reasonable under the circumstances, and cites to the testimony of his expert, Captain Ron Campana, to support that proposition.

---

[33] R. Doc. 132-1 at 11.
[34] R. Doc. 132-1 at 2.
[35] R. Doc. 140.

Cantium has filed a Reply,[36] in which it argues that Lasala conflates the issues of Cantium's comparative fault with the issue of whether Lasala is entitled to limit his liability. Cantium again stresses that the actions taken by Lasala were negligent, even notwithstanding the presumption create against him by the *Pennsylvania* Rule. Cantium argues that the only evidence Lasala cites to in order to argue that his actions were reasonable—the testimony of Captain Campana—is insufficient here as it does not address the myriad of Lasala's actions Cantium claims are negligent. Finally, Cantium argues that Lasala fails to create an issue of material fact as to the vessel's unseaworthiness or Lasala's privity and knowledge.

## II.  LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[37] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[38] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only

---

[36] R. Doc. 167.
[37] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

a scintilla of evidence."[39]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[40]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[41]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[42]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[43]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[44]

This case is set for a bench trial.  The Fifth Circuit has held that "even at the summary judgment stage, a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial,

---

[39] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[40] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).
[41] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
[42] *Id.* at 1265.
[43] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[44] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

could not possibly lead to a different result."[45]  This is because "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact."[46]

### III. ANALYSIS

The Limitation of Liability Act allows the owner of a vessel to limit his liability for certain claims to the value of the vessel and pending freight.[47]  The claims subject to limitation "are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done occasioned, or incurred, without the privity or knowledge of the owner."[48]  To determine whether a vessel-owner entitled to limitation, the Court must follow the two-prong test that the Fifth Circuit enumerated in *Farrell Lines, Inc. v. Jones*.[49] "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident.  Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness."[50]

The first step the Court must therefore address is to identify the acts of negligence or conditions of unseaworthiness that caused the accident.  The Court

---

[45] *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).
[46] *Id.*
[47] 46 U.S.C. § 30505.
[48] *Id.* § 30505(b).
[49] 530 F.2d 7, 10 (5th Cir. 1976).
[50] *Id.*

notes at the outset that an allision may have multiple causes.[51] If any one of the causes was an act of negligence within the privity or knowledge of Lasala, he is not entitled to limitation.[52]

Cantium points to a myriad of actions of Lasala which it argues were negligent, including: (1) leaving the safe harbor of Freemason Island after noting 8-10 inches of water in the bilge, with the bilge pump running and battery issues; (2) turning off his radar at night; (3) failing to appoint a lookout; (4) increasing the vessel's RPMs at night; and (5) using the GPS without a memory card that would have platforms such as MP 37BE marked and failing to have printed charts. Cantium also points to the general unseaworthiness of Lasala's vessel, as demonstrated by the fact that it continued to take on water for an unidentified reason.

Here, the Court focuses on only two of these actions: Lasala leaving the safe harbor of Freemason Island while knowing there were issues with the vessel, and Lasala subsequently turning off the radar at night.[53] The record is clear on both of these points, and the facts regarding Lasala's actions are not in dispute.[54] The record demonstrates that these actions were negligent.[55] Proceeding on a "two-hour to two-

---

[51] *See generally In re Omega Protein, Inc.*, 548 F.3d 361 (5th Cir. 2008) (affirming a district court's finding that two acts of negligence contributed to an allision between a vessel and an oil platform).
[52] *Id.* (exploring whether a vessel owner was entitled to limit liability when it was only fifty percent at fault); *In re TT Boat Corp.*, No. 98-494, 1999 WL 223165, at *8-10 (E.D. La. Apr. 14, 1999).
[53] Although the Court focuses on these two issues in this Order, the Court does not find as a matter of law that these are the only ways that Lasala was negligent. Additional negligence of Lasala, as well as apportionment of fault, will be a matter for trial.
[54] R. Doc. 123-3 at 28-32 (concerning leaving Freemason Island); R. Docs. 123-3 at 50 and 140-5 at 31 (relating to the radar).
[55] *See Contango Operators, Inc. v. United States*, 9 F. Supp. 3d 735, 741 (S.D. Tex. 2014) ("In an allision case the standard of care is reasonable care under the circumstances."). The Court notes that it need not resort to the *Pennsylvania* Rule for this narrow ruling, as Lasala was at fault even notwithstanding any presumption created by that rule.

and-a-half hour" journey when a vessel is taking on water from an unknown source and recently-replaced batteries are low does not comport with a standard of reasonable care. Nor does turning off the vessel's radar when navigating at night when obstacles will be particularly difficult to see. Further, both acts were a proximate cause of the allision. Lasala's decision to navigate his vessel with unresolved mechanical issues on a significant journey at night was a substantial and material factor in causing the ultimate allision; indeed, it was this decision that set in course the other unfortunate events that led to the allision. However reasonable Lasala's actions were under the circumstances after he left the island,[56] a decision to stay at the island would have made those questionable decisions unnecessary. Similarly, the decision to turn off the ship's radar was also a proximate cause of the accidently, particularly as Lasala was then left to rely on only his GPS, which he admitted he did not show all of the rigs.[57]

In an attempt to create an issue of material fact as to Lasala's negligence, Lasala cites to the testimony of Ronald Campana, his expert.[58] But Campana does not directly address the action of Lasala in leaving the safe harbor of Freemason Island while the vessel suffered from mechanical issues. It's true Campana says that "Dr. Lasala, in my opinion, acted in the only reasonable manner he could."[59] But in the context of the Campana's opinion, he seems to be addressing Lasala's actions *after* he chose to abandon the trip to the tuna fishing grounds, and well after leaving the

---

[56] *See* R. Doc. 140-13.
[57] *See* R. Doc. 132-3 at 57.
[58] *See* R. Doc. 140-13.
[59] *Id*. at 9.

safety of Freemason Island. Campana also states that "Yes, a radar is important at night but there are numerous small craft that have no radar."[60] This statement ignores the fact that Lasala's vessel *was* equipped with a radar, which he turned off at night. Accordingly, the Court finds that Campana's testimony does not create an issue of material fact as to Lasala's negligence sufficient to defeat summary judgment.[61]

Much of Lasala's Opposition is designed to hoist blame on Cantium for failing to properly light the platform. This argument largely misses the mark. Even were the Court to find that Cantium is at least partially at fault, what matters for limitation purposes is whether Lasala had knowledge or privity of acts of negligence or conditions of unseaworthiness. Unless the Court were to find that Canitum's alleged negligence is the *sole* cause of the allision (and that Lasala therefore is not in any way at fault), Lasala is not entitled to limitation. Even if the Court were find to find that the *Pennsylvania* Rule creates a presumption against Cantium, as Lasala argues, the facts before the Court do not allow for the limitation action to be maintained.[62] On the undisputed facts before the Court here, there is simply no

---

[60] *Id.* at 9-10.

[61] The Court notes that it does not weigh the evidence in coming to this conclusion. But even were it to do so, it would find that the same evidence, presented at bench trial, could not lead to a different result. *See Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).

[62] *In re Marquette Transp. Co., LLC*, 292 F. Supp. 3d 719, 734 (E.D. La. 2018) ("Liability for property damages sustained in this maritime collision must be allocated to the degree of the parties comparative fault, this is so even where one party is guilty of statutory violations." (citing *Florida East Coast Ry. v. Revilo Corp.*, 637 F.2d 1060, 1066-67 (5th Cir. 1981))). *See also In re Omega Protein, Inc.*, 548 F.3d 361 (5th Cir. 2008) (affirming a district court's finding of comparative negligence of a vessel owner even where the oil platform the vessel struck was not properly lit, in violation of applicable regulations).

chance that the Court will not find Lasala at least some degree contributorily negligent.

Finally, the Court notes that Lasala does not seriously contest Cantium's assertion that the negligent acts were within his privity and knowledge, nor could he as he was responsible for the negligent acts himself. Indeed, as the "owner at the helm" of his own pleasure craft, Lasala had privity and knowledge of the negligent acts as a matter of law.[63]

In sum, the Court has found that Lasala engaged in negligent acts that, at least in part, caused the accident. Such acts were within his privity and knowledge. Lasala therefore is not entitled to limitation or exoneration. The Court will therefore grant Cantium's Motion.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment is **GRANTED**. Lasala's claims for exoneration from or limitation of liability are **DISMISSED WITH PREJUDICE**. The limitation stay is **LIFTED** and **DISSOLVED**.

New Orleans, Louisiana, May 19, 2021.

*Wendy B. Vitter*
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[63] *See Fecht v. Makowski*, 406 F.2d 721 (5th Cir. 1969).