UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF GABRIEL LASALA, AS OWNER OF THE 2016 WORLD CAT MODEL 295CC, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 18-11057 c/w<br>18-11138, 19-9706<br>19-9798, 19-9819<br><br>SECTION D (2) |

**THIS DOCUMENT RELATES TO ALL CASES**

**ORDER AND REASONS**

Before the Court is Foremost Insurance Company's Motion for Summary Judgment.[1] Two Oppositions have been filed,[2] and Foremost has filed a Reply to each.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Courts grants the Motion.

### I.    FACTUAL BACKGROUND

As is described in more detail elsewhere, in April 2018 Gabriel Lasala's vessel allied with a fixed platform owned by Cantium LLC.[4] This Order concerns what happened to Lasala's vessel after the allision, and particularly the claims against Lasala's insurer, Foremost Insurance Company of Grand Rapids Michigan ("Foremost").[5]

---

[1] R. Doc. 131.
[2] R. Doc. 143 (Lasalas); R. Doc. 147 (Pressers). Cantium, LLC, has also adopted the Pressers' Opposition. *See* R. Doc. 156.
[3] R. Doc. 155 (Reply to Lasalas); R. Doc. 170 (Reply to Pressers).
[4] R. Doc. 217 (Factual Background).
[5] The Court notes that because of the structure of the insurance company, Foremost is used somewhat interchangeably with Farmers Insurance Exchange throughout the record. *See* R. Doc. 131-3 at 96 (explaining that Foremost falls within the umbrella of Farmers Insurance Exchange).

Following the allision, the boat was tied to the fixed platform, but eventually got free.[6] Rob Buck, the owner of a marine assistance program named Sea Tow, was contacted by Corey Sandborn of Foremost, who spoke with him about retrieving the vessel.[7] The vessel was eventually found on Grand Gosier Island in the Gulf of Mexico.[8] Buck retrieved the boat and returned it to End of the Line Boat Storage.[9] Buck later brought the vessel to Big John's Towing and Recovery, a company related to Copart Auction Yard ("Copart").[10] The vessel was later transported to a different yard by Copart.[11]

Diane Stanley, Foremost's special claim adjuster, and Corey Sandborn, Foremost's marine claims adjuster, both worked on the Lasala claim. Both knew that this matter may be the subject of litigation, and both sought to preserve the vessel for inspection. On May 24, 2018, Sanborn asked that the vessel be wrapped and put on a hold.[12] Sandborn stated at his deposition that he called Copart and asked that the vessel be wrapped and held.[13] Stanley testified that she spoke with Sandborn about the need for a hold on the vessel,[14] and that she felt that she went "above and beyond" in trying to hold the vessel.[15] However, it is undisputed that neither

---

[6] R. Doc. 131-7 at 15-16.
[7] R. Doc. 131-7 at 25.
[8] *Id.* at 27.
[9] *Id.* at 45.
[10] *Id.* at 49-52.
[11] R. Doc. 131-3 at 22.
[12] R. Doc. 147-3.
[13] *See* R. Doc. 131-4 at 14, 23, and 37.
[14] R. Doc. 131-3 at 27.
[15] *Id.* at 195.

Sandborn nor Stanley followed the correct policy to put a hold on the vessel.[16] Specifically, either Sandborn or Stanley needed to contact specific employees in salvage to order a hold on the vessel.[17] The boat was sold on July 3, 2018.[18] It left Copart's possession on August 3, 2018.[19] The buyer dismantled and scrapped the vessel shortly after receiving it.[20]

Numerous parties have filed claims for spoilation against Foremost related to the sale and destruction of the vessel.[21] The Court previously found that the parties could only seek intentional spoilation claims, and dismissed any negligent spoilation claim asserted by the parties.[22] The Court further found that the parties' intentional spoilation claim arises under Louisiana Civil Code article 2315, and that this Court exercises supplemental jurisdiction over such claims.[23]

Foremost now moves for summary judgment as to the intentional spoilation claims against it.[24] In its Motion, Foremost argues that no party can prove that the vessel was intentionally destroyed. Foremost cites to various Louisiana cases, and stresses that there is no evidence of intent or bad faith on the part of Foremost's employees. Foremost points to the testimony of Diane Stanley and Corey Sandborn

---

[16] *See* R. Doc. 143-3 at 3 (Sandborn Deposition); R. Doc. 143-4 at 32 (Stanley Deposition); R. Doc. 143-5 at 13 (Zemel Deposition).
[17] *See* R. Doc. 147-3 at 36.
[18] R. Doc. 147-3 at 39.
[19] *Id.*
[20] *Id.* at 30.
[21] *See* Docket No. 18-11138, R. Doc. 1 (Pressers); *See* Docket No. 19-9798, R. Doc. 1 (Lasalas), R. Doc. 7 (Cantium); Docket No. 18-11138, R. Doc. 1 (Pressers); R. Doc. 12 (Cantium); Docket No. 19-9818, R. Doc. 7 (Cantium); Docket No. 19-9706, R. Doc. 1 (Pattersons and Junot).
[22] R. Doc. 97.
[23] *Id.*; R. Doc. 180.
[24] R. Doc. 131.

and argues that it demonstrates that they believed the vessel was being preserved. Foremost also argues that the failure of Foremost's employees to follow company protocol does not rise to the level of intentional spoilation.

The Lasalas have filed an Opposition.[25] The Lasalas first argue that Foremost's Motion regarding intentional spoilation does not speak to the other claims the Lasalas assert as a result of the destruction of the vessel, including contractual and breach of fiduciary duty claims. The Lasalas also argue that summary judgment should not be granted when motive or intent is at issue, and they highlight the evidence that they argue supports a finding that the sale of the boat was intentional. Foremost has filed a Reply to the Lasalas' Opposition,[26] in which it agrees that claims other than parties' intentional spoilation claims are not implicated by its Motion. Foremost reiterates its position that the Lasalas have no evidence to support an intentional spoilation claim, and attempt to distinguish the Louisiana caselaw cited by the Lasalas.

The Pressers have also filed an Opposition.[27] The Pressers argue that they have yet to receive certain discovery from Foremost that they contend could be relevant to the resolution of this Motion. The Pressers stress that as an insurance company, Foremost had a duty to preserve the vessel. It cites to the fact that Foremost's employees failed to follow protocols and Foremost's history of other spoilation issues as evidence that Foremost's failure to retain the vessel rises to the

---

[25] R. Doc. 143.
[26] R. Doc. 167.
[27] R. Doc. 147.

level to intentional. In its Reply[28] to the Pressers, Foremost argues that the Pressers have been woefully negligent in conducting discovery and cannot now claim after the close of discovery that additional discovery is needed to rule on the instant Motion. Foremost also distinguishes various cases cited by the Pressers, and again reiterates its position that there exists no evidence to support an intentional spoilation claim.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[29] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[30] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[31] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[32]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[33] The

---

[28] R. Doc. 170.
[29] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[30] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[31] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[32] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).
[33] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[34]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[35]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[36]

This case is set for a bench trial.  The Fifth Circuit has held that "even at the summary judgment stage, a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."[37]  This is because "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact."[38]

---

[34] *Id.* at 1265.
[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[36] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).
[37] *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).
[38] *Id.*

### III. ANALYSIS

This order is limited to the consideration of whether the parties may maintain a claim for damages against Foremost based on intentional spoliation.[39] Under Louisiana law, "[t]he theory of 'spoliation' of evidence refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. A plaintiff asserting a claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence."[40] "Allegations of negligent conduct are insufficient."[41] Because it is briefed by the parties, the Court notes that the same is true under federal law.[42]

Here, the parties asserting intentional spoilation claims have failed to point to any evidence which would support the most central element to their claim: an intent on the part of Foremost to destroy the vessel to deprive other parties of its use as evidence in this litigation. Indeed, the evidence points overwhelmingly in the opposite direction, as it demonstrates that there was no intent to destroy the vessel in order to deprive any party of the evidence. Corey Sandborn stated repeatedly that he believed he had been clear with Copart that the boat was to be held.[43] Sandborn testified that when he found out the boat was sold, "it was devastating" and "the floor fell out from underneath [him]" because he "had called Copart, and [he], you know, made sure [he] was very clear with the person that . . . this is very important for this

---

[39] The Court notes, however, that no adverse inference may be made against Foremost's insured, Lasala, as he was not responsible for the sale and destruction of the vessel.
[40] *Clavier v. Our Lady of the Lake Hosp. Inc.*, 112 So. 3d 881, 885 (La. App 1 Cir. 2012).
[41] *Id.*
[42] *See, e.g.*, *United States v. E.R.R. LLC*, No. 19-2340, 2020 WL 4762218, at *3 (E.D. La. Aug. 14, 2020).
[43] *See, e.g.*, R. Doc. 131-4 at 23 ("I made it very clear, like, this needs to get prepared for inspection, I need to get a hold on it.").

claim; that [Foremost] would be able to inspect this, and this thing be secured and be, you know, wrapped up in plastic, and I got, again, nothing but confirmation."[44] Similarly, Diane Stanley stated she "though [she] was going beyond [her] legwork" in putting a hold on the vessel.[45] She further state that she "had every intention to hold it, and [she] thought she did way more work than [she] would have needed to have done had [she] just sent an email and notified salvage."[46]

      To be sure, there is some evidence of negligence on the part of Foremost's agents in failing to preserve the vessel. It is undisputed that Stanley and Sandborn failed to follow the proper policy and procedure to put a hold on the vessel.[47] The record indicates that this was not a willful disregard of the policy, but ignorance of a policy with which both adjusters were unfamiliar.[48] On these facts, Stanley's and Sandborn's failure to follow the policy is evidence of the parties' negligence, not of their intent to destroy the evidence. Although he did not follow Foremost policy on placing a hold on the vessel, Sandborn took other steps, that he believed were sufficient to preserve the evidence.[49] Nor is the failure of Stanley or Sandborn to coordinate with the salvage team evidence of intent, as it too only points to negligence. Finally, evidence that Foremost has had other spoilation issues in the past[50] is not relevant to whether the Foremost employees in this matter intentionally

---

[44] *Id.* at 37.
[45] R. Doc. 131-3 at 196.
[46] *Id.* at 197.
[47] *See* R. Doc. 143-3 at 3 (Sandborn Deposition); R. Doc. 143-4 at 32 (Stanley Deposition); R. Doc. 143-5 at 13 (Zemel Deposition).
[48] *See* R. Doc. 134-4 at 85 (Sandborn Deposition); R. Doc. 131-3 at 197 (Stanley Deposition).
[49] *See* R. Doc. 131-4 at 14, 23, and 37.
[50] *See* R. Doc. 147-3 at 36.

destroyed evidence to prevent other parties from using it. The evidence—viewed in the light most favorable to those asserting the intentional spoilation claims—only amounts to evidence of negligence on the part of Foremost.

The Lasalas resist this conclusion by arguing that issues of intent should not be decided on summary judgment, as the fact-finder has limited ability to assess the credibility of a witness on a written record. It is true that "summary judgment is rarely proper when an issue of intent is involved."[51] But "the presence of an intent issue does not preclude summary judgment: the case must be evaluated like any other to determine whether a genuine issue of material fact exists."[52] Indeed, summary judgment may be properly granted even if intent is an essential element of the nonmoving party's case.[53] Here, the Court has determined that no issues of material fact exist as to whether Foremost intentionally destroyed evidence to prevent its use by other parties. Moreover, "the same evidence, presented to [the Court] as trier of fact in a plenary trial, could not possibly lead to a different result" in this matter.[54] Accordingly, the issue of intent does not preclude summary judgment on the intentional spoilation claims.

The Pressers' arguments that discovery remained outstanding are also unavailing. Discovery in this matter closed February 12, 2021.[55] The instant Motion was filed after that discovery deadline.[56] The Pressers made no motion to extend

---

[51] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996).
[52] *Id.*
[53] *Krim v. BancTexas Grp. Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993).
[54] *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).
[55] *See* R. Doc. 99.
[56] *See* R. Doc. 131 (filed February 17, 2021).

discovery—nor have they since that time. The Pressers complain that they only recently learned the names of Jim Enright and Daniel Callegan, members of Foremost's salvage team involved in the same of the vessel. The record before the Court reflects that the names Jim Enright and Daniel Callegan were included in Foremost's claim file, which was produced well before the close of discovery.[57] The Pressers also argue that they first learned of these names of Enright and Callegan in Dan Zemel's deposition—a deposition the Pressers did not take until one week before the discovery deadline.[58] Nevertheless, a party cannot wait until the eve of the close of discovery to conduct a significant deposition and then complain of the need for additional discovery based on information learned in that deposition. Although the Court recognizes that a good deal of discovery took place in the final two weeks before the Court's discovery deadline, that speaks in part to the Pressers' lack of diligence in pursuing discovery related to this claim. More importantly, the Court is not convinced that additional discovery regarding additional Foremost employees, including Jim Enright and Daniel Callegan, would yield relevant evidence on this issue as the record is clear that it was ultimately the responsibility of Sandborn and Stanley to put a proper hold on the vessel.[59] Accordingly, the Court does not find this argument precludes summary judgment.

   In short, because the parties asserting intentional spoilation claims have failed to point to any evidence that Foremost intentionally destroyed the vessel to deprive

---

[57] *See* R. Doc. 170-10.
[58] *See* R. Doc. 131-5.
[59] *See* R. Doc. 143-5 at 13.

the parties' of the evidence, summary judgment is warranted. The Court notes that this order addresses only the parties' intentional spoilation claims, and not the other claims asserted against Foremost by the Lasalas.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment is **GRANTED**.

New Orleans, Louisiana, June 3, 2021.

*Wendy B Vitter*
_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**